**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MARK A. BATES**
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT EARL DAVIS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1203-CR-145 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Kathleen A. Sullivan, Judge Pro Tempore
Cause No. 45G02-1107-MR-6

**January 23, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Less than three years after being discharged from parole for a murder he committed at the age of eighteen, forty-five-year-old Robert Earl Davis murdered again. Davis now appeals his second murder conviction and sixty-five-year sentence. We find no fundamental error in the trial court's accomplice-liability instruction or in the prosecutor's statements during closing argument, that the evidence is sufficient to support Davis's conviction, and that Davis has failed to persuade us that his sixty-five-year sentence is inappropriate. We therefore affirm.

**Facts and Procedural History**

The facts most favorable to the verdict follow. Alisha Williams lived with Parrish Myles, whom she had been dating for sixteen years, and their two children, A.L. and D.M., in The Mansards Apartments in Griffith, Indiana. On the morning of July 22, 2011, Alisha was running late for work so she asked Parrish to take A.L., age eleven, and D.M., age five or six, to day care. Around 9:30 a.m., Parrish put the children in his Chevrolet Tahoe. A.L. got in the front seat, and D.M. got in the back seat. Parrish went to put trash in the dumpster when a bronze-colored Toyota Camry with Illinois license plates and registered to Davis pulled up.

The occupants of the Camry called out to Parrish, and Parrish walked up to the passenger side of the car and briefly talked to the two men in the car. As Parrish walked away from the Camry, a shot was fired from inside the car, hitting him. A man in a red-colored shirt, white tennis shoes, and hat exited the driver's side of the Camry and shot Parrish again. A man in a white shirt stayed in the car and slid over to the driver's seat.

2

The man in the red-colored shirt and white tennis shoes got in the passenger seat, and the man in the white shirt drove away. A.L. witnessed the entire incident. Other residents in the apartment complex heard the shots and called 911. One of the residents, Rosa Orphey, had just finishing drinking tea on her patio when she saw the man in the red-colored shirt shoot Parrish while he was on the ground. Another resident, Krystle Gavin, was putting antifreeze in her car when she heard the shots. Krystle said that a man in a red-colored shirt had a gun and that his skin was darker than the man's skin in the car.

Griffith Police Department Officer Robert Carney responded to reports that a gold sedan was leaving the scene of a shooting. Officer Carney quickly located the car, which was stopped at a red light at the intersection of Ridge Road and Broad Street. Officer Carney noticed the car because a man was standing outside the passenger side, walked around the car, and entered the driver's seat, thereby switching drivers. Although the man was wearing a light-colored shirt instead of a red-colored shirt, the man was wearing white tennis shoes, the same color as the shooter's shoes. Officer Carney activated his emergency lights. The man, however, refused to stop, and a high-speed chase ensued with the Camry reaching speeds of over 100 miles per hour, running red lights, and weaving through traffic in residential areas and on I-80/94. At one point, the driver stopped and dropped off the man in the white shirt, who was wearing black tennis shoes. He disappeared along the Little Calumet River carrying a red-colored shirt and a red hat as the driver sped off. Officer Carney continued his pursuit of the driver until Officer Carney crashed his car into a tree in a residential area. Another officer continued chasing the driver, and the chase ended when the driver, identified as forty-five-year-old Davis

3

from Chicago, crashed his Camry head-on into another police officer's car. The police collected Davis's clothing, which included a light-colored shirt and white tennis shoes. The passenger of the car who had been dropped off at the Little Calumet River, Davis's twenty-nine-year-old nephew, Lyndon Davis ("Lyndon"), also from Chicago, was eventually apprehended.

Police responded to the scene of the shooting within minutes to find Parrish lying face down in the roadway. Parrish was breathing and moving slightly but quickly lost his pulse. An ambulance transported Parrish to the hospital. Parrish was shot four times and died from multiple gunshot wounds. A copper bullet jacket was collected at the scene and bullet fragments were collected from Parrish's body. It was determined that the bullet fragments and casings were fired from the same weapon, which was never recovered. Police recovered a red-colored shirt and a red hat on the river bank near the area where Davis had dropped off Lyndon during the chase.

The State charged Davis with murder and felony murder, but the State dismissed the felony-murder charge before trial. A five-day jury trial began in January 2012. The State's theory at trial was that Davis was the shooter; the State uncovered no motive for the murder. Davis's theory was that "he had nothing to do with the killing of Parrish Myles," he did not have an agreement with Lyndon, and the "only thing" he was guilty of was "fleeing from the police." Tr. p. 762-63. The trial court instructed the jury on accomplice liability. The jury found Davis guilty of murder. Following the sentencing hearing, the trial court found no mitigators and two aggravators, Davis's prior convictions

of murder and armed robbery and that Davis committed the murder in front of Parrish's children. The court sentenced Parrish to sixty-five years.

Davis now appeals.

## Discussion and Decision

Davis raises several issues on appeal. First, he contends that the trial court erred in failing to give his tendered instructions on accomplice liability. Second, he contends that the prosecutor committed prosecutorial misconduct. Third, Davis contends that the evidence is insufficient to support his murder conviction. Finally, he contends that his sixty-five-year sentence is inappropriate.

## I. Jury Instructions

Davis contends that the trial court erroneously instructed the jury on accomplice liability and should have given his tendered instructions instead. *Id.* at 634 (Defendant's Instruction Nos. 1 & 4). We review the trial court's decision to give a jury instruction for an abuse of discretion. *Brooks v. State*, 895 N.E.2d 130, 132 (Ind. Ct. App. 2008). To constitute an abuse of discretion, the instruction given must be erroneous, and the instructions viewed as a whole must misstate the law or otherwise mislead the jury. *Id.*

Davis concedes that he did not object to the trial court's accomplice-liability instruction, Final Instruction No. 6. *See Scisney v. State*, 701 N.E.2d 847, 849 (Ind. 1998) ("We hold that appellate review of a claim of error in the giving of a jury instruction requires a timely objection clearly identifying both the claimed objectionable matter and the grounds for the objection, but that the tender of a proposed alternative

5

instruction is not necessarily required to preserve the claim of error.").  In order to avoid procedurally defaulting on this claim, Davis argues fundamental error.

The fundamental-error doctrine provides a vehicle for the review of error not properly preserved for appeal.  *Hoglund v. State*, 962 N.E.2d 1230, 1239 (Ind. 2012), *reh'g denied*.  In order to be fundamental, the error must represent a blatant violation of basic principles rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process.  *Id.*  Harm is not shown by the fact that the defendant was ultimately convicted; rather, harm is found when error is so prejudicial as to make a fair trial impossible.  *Id.*

The trial court's Final Instruction No. 6 provides:

> Where two or more persons engage in the commission of an unlawful act; each person may be criminally responsible for the actions of each other person which were a probable and natural consequence of their common plan even though not intended as part of the original plan.  It is not essential that participation of any one person to each element of the crime be established.
> A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person:
> 1. has not been prosecuted for the offense;
> 2. has not been convicted of the offense; or
> 3. has been acquitted of the offense.
> To aid under the law is to knowingly aid, support, help or assist in the commission of a crime.  Mere presence at the scene of the crime and knowledge that a crime is being committed are not sufficient to allow an inference of participation.  It is being present at the time and place and knowingly doing some act to render aid to the actual perpetrator of the crime.
> The presence of a person at the scene of the commission of a crime and companionship with another person engaged in the commission of the crime and a course of conduct before and after the offense are circumstances which may be considered in determining whether such person aided and abetted the commission of such crime.

6

Tr. p. 779.[1]

Davis first argues that Final Instruction No. 6 "fails to inform the jury to consider the voluntary conduct of Davis in committing the charged crime." Appellant's Br. p. 9. The jury must be instructed that accomplice liability requires proof that the defendant engaged in voluntary conduct in concert with his accomplice. *Carter v. State*, 766 N.E.2d 377, 383 (Ind. 2002), *reh'g denied*. Davis relies on *Small v. State*, 531 N.E.2d 498 (Ind. 1988), in support of his argument that reversal of his murder conviction is required in this case. In *Small*, the jury instruction provided:

> Indiana law provides that: A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense. It is also the law that a Defendant is responsible for the acts of his codefendants as well as his own acts. Any act of one is attributable to them all.

*Id.* at 499. Our Supreme Court found that the words "It is also the law that" separating portions of the instruction created two separate bases for criminal liability; the second part of the instruction lacked any statement that criminal liability required proof of voluntary conduct in violation of a criminal statute. *Id.*; *see also Marshall v. State*, 621 N.E.2d 308, 319-20 (Ind. 1993). Accordingly, our Supreme Court found this to be reversible error. *Small*, 531 N.E.2d at 500.

Here, unlike the instruction in *Small*, Final Instruction No. 6 includes the following language, "To aid under the law is to knowingly aid, support, help or assist in the commission of a crime" and "It is being present at the time and place and knowingly

---

[1] This is not the pattern jury instruction on accomplice liability. *See* 1 Ind. Pattern Jury Instructions (Criminal) No. 2.11 (3d. ed. 3/2011). While the preferred practice is to use the pattern jury instructions, there is no prohibition against the use of appellate-decision language in jury instructions. *Gravens v. State*, 836 N.E.2d 490, 493 (Ind. Ct. App. 2005), *trans. denied*.

7

doing some act to render aid to the actual perpetrator of the crime." This same language was used in *Marshall*, and our Supreme Court found no defect in the language. 621 N.E.2d at 320. Accordingly, we find that Final Instruction No. 6 required voluntary, affirmative conduct on the part of Davis and made no suggestion that Davis could be convicted based on the actions of Lyndon without also aiding Lyndon. Moreover, the instruction made clear that Davis's mere presence at the scene or his knowledge that a crime was being committed, which are primary examples of passive conduct, would not be enough to establish accomplice liability.

Davis next argues that Final Instruction No. 6 is erroneous because it instructs the jury to look to Davis's actions "before and after, but not during, the crime." Appellant's Br. p. 10. It is true that our case law provides that one of the factors in determining whether a defendant acted as an accomplice is his "course of conduct *before, during, and after* occurrence of crime." *See, e.g.*, *Castillo v. State*, 974 N.E.2d 458, 466 (Ind. 2012) (emphasis added). Here, however, the trial court's instruction said to look to Davis's conduct before and after, but not during, the crime. Tr. p. 779 ("a course of conduct before and after the offense are circumstances which may be considered . . . ."). This highlights the importance of a timely objection. If Davis had objected, the trial court could have edited the jury instruction to include the word "during." Nevertheless, because Final Instruction No. 6 includes language such as "The presence of a person at the scene of the commission of a crime and companionship with another person engaged in the commission of the crime," which ensures that the jury considered Davis's actions

8

at the time of the crime, we find that the omission of the word "during" was not fundamental error.

The trial court's accomplice-liability instruction therefore does not rise to the level of fundamental error.

## II. Prosecutorial Misconduct

Davis next contends that the prosecutor committed two instances of prosecutorial misconduct. We evaluate a properly preserved claim of prosecutorial misconduct using a two-step analysis. We first determine whether misconduct occurred; then, if there was misconduct, we assess whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected otherwise. *Castillo*, 974 N.E.2d at 468. To preserve a claim of prosecutorial misconduct, the defendant must ask the trial court, at the time the misconduct occurs, to admonish the jury or move for a mistrial if the admonishment is inadequate. *Id.* Failure to request an admonishment or a mistrial waives the claim, unless the defendant can demonstrate that the misconduct rises to the level of fundamental error. *Id.* Fundamental error is a narrow exception intended to place a heavy burden on the defendant. *Id.* It requires the defendant to establish that the misconduct "[made] a fair trial impossible or constitute[d] clearly blatant violations of basic and elementary principles of due process" or that the misconduct "present[ed] an undeniable and substantial potential for harm." *Id.* (quotation omitted). The mere fact that an alleged error implicates constitutional issues does not establish that fundamental error has occurred. *Nichols v. State*, 974 N.E.2d 531, 535 (Ind. Ct. App. 2012).

*A. Comment on Right to Remain Silent*

Davis first argues that the prosecutor committed prosecutorial misconduct during closing argument by referencing his right to remain silent, entitling him to a new trial. After discussing Davis's and Lyndon's cell-phone records, which showed their locations, the prosecutor continued:

> So, that gives us an idea that it's not like these guys were just wrongfully picked up randomly off the street, they just happened to be there. These are guys that were talking to each other the day before, these are guys that were talking to each other the day before, these are guys that were talking to each other earlier that morning, these are guys that got together in the same vehicle and were around the Mansards for some time waiting for Parrish Myles to come outside with his kids where he's gunned down. We don't have to prove motive and I don't know why and I can't accept a good reason why something like that would ever be acceptable. I don't know the reason. And as the State, we don't have to know it. He has a right not to say anything, he has a right to remain silent.
>
> BY MR. STIGLER:
>   Objection. May we approach, Judge?
>
> BY THE COURT:
>   You may.
>
> AT THIS POINT A DISCUSSION WAS HELD AT THE BENCH, OUTSIDE THE HEARING OF THE JURY.
>
> BY MR. STIGLER:
>   She had no reason to comment at all about his particular right and now she has broached the issue to this particular jury. I would ask that the jury be admonished that you will give an instruction concerning that.
>
> BY MS. SCOTT:
>   That's fine.
>
> BY THE COURT:
>   You need to be careful about referencing things like that.
>
> BY MS. SCOTT:
>   Okay.

10

BY THE COURT:
     It seems to suggest that he didn't give a statement to the police, but you don't have the right to comment on that at all. All right?

BY MS. SCOTT:
     Okay. I'll move on.

WHEREUPON THE FOLLOWING WAS HELD BACK IN THE HEARING OF THE JURY.

BY THE COURT:
     Ladies and gentlemen, you will get an instruction from the Court about the defendant's right to remain silent and not having to prove or present any evidence which I think I already have discussed a couple times already.
     All right. Go ahead.

Tr. p. 752-55. The trial court later gave related instructions in its Final Instruction No. 10 (the defendant is not required to present any evidence or to prove or explain anything) and No. 12 (the fact that the defendant did not testify is not to be considered as evidence of his guilt and should not be commented on in arriving at a verdict). *Id.* at 784, 786.

Although Davis requested an admonishment, he did not request a mistrial on grounds that the trial court's admonishment was insufficient. Therefore, Davis has waived this issue and must show that fundamental error occurred.

The Fifth Amendment privilege against self-incrimination is violated "when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence." *Dumas v. State*, 803 N.E.2d 1113, 1118 (Ind. 2004) (quotation omitted). The defendant bears the burden of showing that a comment improperly penalized the exercise of the right to remain silent. *Moore v. State*, 669 N.E.2d 733, 739 (Ind. 1996), *reh'g denied*.

The prosecutor's comment does not amount to fundamental error. Unlike most cases, here the State did not have a motive for Parrish's murder. The prosecutor was explaining to the jury—which was likely curious during this five-day trial why Parrish was murdered in broad daylight in front of his children—that the State did not need to know the motive in order to prove its case against Davis and mentioned that Davis had the right not to say anything and to remain silent, thus not supplying a motive in the case. Regardless of the prosecutor's reason for making the comment, the comment did not make a fair trial impossible for Davis or constitute clearly blatant violations of basic and elementary principles of due process. This is because the comment was an isolated statement in a lengthy closing argument that the State estimates at thirty minutes, *see* Appellee's Br. p. 14, thereby lessening its effect on the jury. And immediately after the prosecutor made the comment, the trial court issued a curative statement to the jury and the prosecutor moved on. There is no fundamental error.[2] *Cf. Nichols*, 974 N.E.2d at 536 (finding fundamental error in the prosecutor's closing argument where the prosecutor discussed "at length" an unrelated case where the evidence was extremely thin but the defendant was convicted because he chose to testify and in testifying he provided the jury with evidence of his guilt and the prosecutor said the foreman in that case "twice" told him afterwards that if the defendant had not testified, he would have been "a free man"; this Court concluded that it was "obvious that the prosecutor was suggesting that the jury draw an inference of guilt from Nichols's decision not to testify" in this case).

---

[2] To the extent that Davis makes a separate argument under the Indiana Constitution, *see Moore*, 669 N.E.2d at 739 n.14 ("The Indiana Bill of Rights also protects a defendant's right to remain silent at trial, Ind. Const. Art. 1, § 14 . . . , and it is not necessarily coextensive with the federal Fifth Amendment . . . ."), we reach the same result under both constitutions.

*B. Comment on Law of Accomplice Liability*

Davis next argues that the prosecutor committed prosecutorial misconduct during closing-argument rebuttal when she referenced the accomplice-liability instruction and said "course of contact" instead of "course of conduct" and failed to mention that voluntary conduct was required, thus entitling him to a new trial. The prosecutor said:

> And he wants to talk about that there's no agreement [between Davis and Lyndon]. Well, guess what? Accomplice liability, it doesn't require an agreement. In fact, the instruction, you'll get the whole, but there's a portion of that instruction that tells you, the presence of a person at the scene of the commission of a crime and companionship with another person engaged in the commission of the crime, and *a course of contact* before and after the offense are circumstances which may be considered in determining whether such person aided and abetted the commission of such crime. So, even if for some reason you don't believe that the State of Indiana has proven that Robert Davis killed Parrish Myles, you better believe he's guilty through accomplice liability.

Tr. p. 770-71 (emphasis added). Again, Davis did not object and must show that fundamental error occurred.

As the State argues on appeal, "course of contact" appears to be an inadvertent misstatement by the prosecutor or a typographical error in the transcript. In other words, there is nothing to suggest that the prosecutor intentionally said "course of contact" instead of "course of conduct" in order to mislead or confuse the jury about the law on accomplice liability. The instruction clearly says "course of conduct." Moreover, the prosecutor did not ask the jury to convict Davis without finding that he committed some voluntary act and never again said "course of contact." The prosecutor told the jury that she was referring to only part of the accomplice-liability instruction and that it would hear the entire instruction later. As for the fact that the instruction was missing the word

13

"during," we already addressed that issue above. There is no fundamental error on this issue.

### III. Sufficiency of the Evidence

Davis also contends that the evidence is insufficient to support his conviction for murder, as either the shooter or an accomplice. Generally, there is no distinction between the criminal liability of an accomplice and a principal. *Castillo*, 974 N.E.2d at 466. In fact, a defendant may be charged as the principal but convicted as an accomplice. *Id.*

When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility or reweigh the evidence. *Id.* When confronted with conflicting evidence, we consider it most favorably to the trial court's ruling. *Id.* We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quotation omitted). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

We find that the State presented sufficient evidence that Davis is the one who shot and killed Parrish. A.L. testified that after the initial shot that came from inside the Camry, the driver, who wore a red-colored shirt, exited the car and shot her father. A.L. also testified that the shooter had a "[f]at" face and wore white tennis shoes and that the tennis shoes recovered from Davis when he was apprehended were similar to the ones the shooter wore. Tr. p. 433. After the man in the red-colored shirt shot Parrish, he entered

14

the passenger-side of the Camry, and the man in the white shirt slid over to the driver's seat and drove away. Parrish was shot a total of four times and died from his wounds. Within minutes of the shooting, Officer Carney located the Camry stopped at a stoplight. A man in a light-colored shirt and white shoes was standing outside the car. Officer Carney watched the man walk to the driver's side of the car, enter the car, and drive away, thus switching drivers. Officer Carney activated his emergency lights, but the driver, later identified as Davis, did not stop, and a high-speed chase ensued. When Davis was finally apprehended, he was wearing white tennis shoes, which is the same color of shoes that the shooter wore; the passenger who was dropped off, Lyndon, was wearing black tennis shoes. Although Davis was not wearing a red-colored shirt when he was apprehended, Lyndon had a red-colored shirt in his hand when Davis dropped him off at the Little Calumet River, and a red-colored shirt was later found along the Little Calumet River.[3]

In addition, two apartment residents heard the shots. Rosa testified that a man in a red-colored shirt shot Parrish while he was on the ground. Krystle testified that a man in a red-colored shirt had a gun in his hand and that his skin was darker than the man's skin in the car. The booking photographs of Davis and Lyndon show that Davis has darker

---

[3] The State asserts on appeal that Davis's DNA was found on the red-colored shirt. However, the prosecutor was very clear in its opening statement and closing argument that no DNA was found on the red-colored shirt. *See, e.g.*, Tr. p. 749 ("[T]he red shirt is found on the Little Calumet. The red shirt is in Lyndon's hands, disposing of it for his uncle. It doesn't have any DNA on it. It's a 4X. You saw Lyndon in the White Castle, he's a very skinny guy. He doesn't have any DNA and you heard from the analyst there's several reasons that could be. One, it sat outside in the torrential rain storm all day before they picked it up at six o'clock that night. Two, it's a really big shirt. If you wear really baggy clothing, it's not going to chafe on your skin as much. . . . And finally, if you wear it over other clothing, so say you're Robert Davis and you got on a gray T-shirt underneath that red shirt, it's not going to touch your skin anyway.").

15

skin than Lyndon and that Davis has a fuller face. *See* State's Ex. 26 & 27. All of his evidence is sufficient to prove that Davis is the one who shot and killed Parrish.

Nevertheless, Davis points to conflicts in the evidence, such as that A.L. testified that the shooter had earrings, yet Lyndon, and not Davis, had pierced ears. Davis also points out that the gun was never located. Davis's argument that there was no direct evidence to tie him to the crime is merely a request for us to reweigh the evidence, which we will not do.

Even if the jury did not find that Davis was the man in the red-colored shirt who shot Parrish, the evidence is sufficient to convict Davis as an accomplice. We consider four factors to determine whether a defendant acted as an accomplice: (1) presence at the scene of the crime; (2) companionship with another at scene of crime; (3) failure to oppose commission of crime; and (4) course of conduct before, during, and after occurrence of crime. *Castillo*, 974 N.E.2d at 466. That a defendant was present during the commission of a crime and failed to oppose the crime is not sufficient to convict him. *Id.* But, presence at and acquiescence to a crime, along with other facts and circumstances, may be considered. *Id.*

Under an accomplice theory, the evidence shows that Davis was a willing accomplice in Parrish's murder. Davis and Lyndon drove together from Chicago to The Mansards Apartments in Griffith, Indiana, in Davis's car. They called out to Parrish, and when Parrish walked away from the Camry, a shot was fired from inside the car at Parrish. One of the men exited the car and shot Parrish again. The car then fled the scene. Davis switched into the driver's seat at an intersection and led the police on a

16

high-speed chase. At one point during the chase, Davis dropped off Lyndon at the Little Calumet River, where Lyndon disposed of a red-colored shirt and a red hat. The chase finally ended when Davis crashed into an officer's car. The gun was never located. The evidence is also sufficient to convict Davis as an accomplice to Parrish's murder.

## IV. Inappropriate Sentence

Finally, Davis contends that this sixty-five-year sentence is inappropriate and asks us to revise it to the advisory term of fifty-five years. Our rules authorize revision of a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "[A] defendant must persuade the appellate court that his or her sentence has met this inappropriateness standard of review." *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case. *Id.* at 1224.

A person who commits murder shall be prisoned for a fixed term of between forty-five years and sixty-five years, with the advisory sentence being fifty-five years. Ind. Code § 35-50-2-3. The trial court sentenced Davis to sixty-five years.

Davis's character alone justifies a sixty-five-year sentence. Today, at age forty-six, Davis has spent essentially his entire adult life in prison. In 1984, at age eighteen, Davis committed murder and armed robbery in Cook County, Illinois, and was sentenced to an aggregate term of thirty-nine years. He was released to parole in February 2007 at age forty and was discharged from parole in September 2008 at age forty-two. Less than three years after being discharged from parole, in July 2011, Davis, age forty-five, committed the murder in this case.

As for the nature of the offense, even Davis describes it as "tragic" and "deplorable." Appellant's Br. p. 26. The shooting was committed in broad daylight in front of Parrish's children. Davis's denial of any involvement in Parrish's murder at his sentencing hearing does not justify his request for us to impose the advisory sentence.

Given Davis's previous murder conviction and the callous nature of this killing in front of Parrish's children, Davis has failed to persuade us that his sixty-five-year sentence is inappropriate.

Affirmed.

BAILEY, J., and BROWN, J., concur.