**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**RUTH JOHNSON**
**MATTHEW D. ANGLEMEYER**
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

MICHAEL KIMES,                        )
                                      )
    Appellant-Defendant,          )
                                      )
      vs.                      )    No. 49A04-1309-CR-440
                                      )
STATE OF INDIANA,                     )
                                      )
    Appellee-Plaintiff.           )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Mark D. Stoner, Judge
Cause No. 49G06-1303-FA-14982

**March 31, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Michael Kimes was found guilty of child molesting[1] as a Class A felony and was sentenced to thirty years with six years suspended, three of those years on sex offender probation. He appeals, raising the following restated issues for our review:

I. Whether the State committed fundamental error by engaging in prosecutorial misconduct during closing arguments;

II. Whether the trial court abused its discretion in sentencing Kimes because it failed to consider his mental and physical health conditions as a mitigating circumstance; and

III. Whether Kimes's sentence was inappropriate in light if the nature of the offense and the character of the offender.

We affirm.

## FACTS AND PROCEDURAL HISTORY[2]

During the time period of 2010 to 2011, Chassidy Kimes ("Chassidy") was working as a receptionist at a pediatric dental clinic on the north side of Indianapolis, Indiana. At first, her normal work hours included every other Saturday from 9:00 a.m. until 1:00 p.m. Chassidy had two daughters, A.G. and. A.L. The children's father watched them every other Saturday while Chassidy worked. At some point, Chassidy's hours changed, and she was required to work every Saturday. She was forced to make other arrangements for childcare on the weekends because the children's father could not take every Saturday off.

---

[1] *See* Ind. Code § 35-42-4-3.

[2] The record on appeal in this case was prepared pursuant to the Indiana Supreme Court's "Order Establishing the Indiana Court Reporting Pilot Project for Exploring the Use of an Audio/Visual Record on Appeal[,]" issued on September 18, 2012, and effective on July 1, 2012. *See In Re Pilot Project For Audio/Visual Recordings In Lieu of Paper Transcripts In the Preparation of the Record and Briefing on Appeal*, 976 N.E.2d 1218 (Ind. 2012). We are grateful for the ongoing cooperation of the Honorable Mark D. Stoner of Marion Superior Court, the Marion County Public Defender Agency, and the Office of the Indiana Attorney General in the execution of this pilot project.

Chassidy asked her father, Kimes, if he would watch the girls on Saturdays, and Kimes agreed.

Because Kimes lived on the south side of Indianapolis, Chassidy lived on the east side, and her place of employment was on the north side, Chassidy would drop the girls off at Kimes's house on Friday evening and return on Saturday afternoon to pick them up. At Kimes's house, the girls basically "slept where they fell," sometimes on the living room floor, sometimes on a pallet in Kimes's room, and sometimes in Chassidy's sixteen-year-old brother's bedroom. A/V Recording of 7/29/13 at 3:33:35-54.[3]

One night, while A.G. was sleeping in Kimes's bedroom on the floor, she woke up because Kimes was touching her "bad part," which is what she called her vagina. A/V Recording of 7/29/13 at 2:09:20, 2:10:51, 2:11:57. She saw Kimes's mouth on her bad part and felt him put his tongue inside of her vagina. She said that, "it felt icky and slimy." A/V Recording of 7/29/13 at 2:14:57. A.G. pretended that she needed to use the bathroom and asked Kimes to get off of her. She instead went downstairs to sleep in the living room. A.G. also related with less specificity other incidents that she alleged happened between her and Kimes. A/V Recording of 7/29/13 at 2:17:43, 2:17:48, 2:18:07-16, 1:20:05-26, 2:24:15-20, 2:24:57-25:04, 2:35:52-36:10, 2:38:20-25.

At one point in 2011, when Chassidy had picked up the girls from Kimes's house, A.G. told Chassidy that Kimes had touched her. Chassidy asked if it was a good touch or a bad touch, and A.G. pointed to her leg. Chassidy demonstrated the difference between a

---

[3] Because there is no paper transcript, our citations reflect the location of the information on the DVD.

good touch and a bad touch, and although A.G. seemed confused, A.G. told Chassidy the touch was more like a good touch. A/V Recording of 7/29/13 at 3:41:10. However, around that time, the girls said that they did not want to stay with Kimes anymore, so Chassidy made other arrangements.

About a year later on a Friday in February, Chassidy and A.G. were out running errands when they drove past a jail. A.G. asked Chassidy what kind of people went to jail, and Chassidy told her that bad people who do not follow the laws go to jail. A.G. then said that Kimes needed to go to jail because he was a bad man. Chassidy asked a few questions, but did not know how to handle the disclosure. They went home, and Chassidy spoke with A.G.'s father, who then had a conversation with A.G. about the allegations. Chassidy researched online how to handle an allegation of child molesting, found the Child Advocacy Center's website, and determined that she and A.G.'s father should not speak to A.G. about the incident further. She called the Child Advocacy Center on Monday morning and set up an appointment for A.G. to go in and be interviewed the following Friday.

On March 5, 2012, the State charged Kimes with two counts of Class A felony child molesting. A jury trial was conducted on July 29, 2013. During closing arguments in rebuttal, the State referred to a practice in Jewish neighborhoods during World War II to leave doors open during air raids so that children could seek shelter in any nearby house. A/V Recording of 7/29/13 at 5:18:35-19:32. Kimes objected, claiming this statement constituted misconduct. The State responded that it was explaining why Indiana would have a rule that allows a conviction to rest on a single witness's testimony and likened the open-door rule's concern for children to the law that allows the testimony of only one

4

eyewitness to be sufficient for a conviction. A/V Recording of 7/29/13 at 5:20:22-31. The trial court overruled Kimes's objection. Kimes did not request an admonishment or mistrial. At the conclusion of the trial, the jury found Kimes guilty of one count of Class A felony child molesting and acquitted him of the other count of child molesting. Kimes was sentenced to thirty years, with six of those years suspended and three of those suspended years to be on sex offender probation. Kimes now appeals.

## DISCUSSION AND DECISION

### I. Prosecutorial Misconduct

Generally, in order to properly preserve a claim of prosecutorial misconduct for appeal, a defendant must not only raise a contemporaneous objection, but he must also request an admonishment; if the admonishment is not given or is insufficient to cure the error, then he must request a mistrial. *Cooper v. State,* 854 N.E.2d 831, 835 (Ind. 2006). Failure to request an admonishment or to move for mistrial results in waiver. *Id.* Kimes concedes that, although he objected to the State's comments, he did not request an admonishment or move for a mistrial and, therefore, did not properly preserve his claim.

To prevail on a claim of prosecutorial misconduct where the misconduct has not been properly preserved, the defendant must establish not only the grounds for the prosecutorial misconduct, but also the additional grounds for fundamental error. *Id.* In reviewing a claim of prosecutorial misconduct, we determine (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected. *Nichols v. State*, 974 N.E.2d 531, 535 (Ind. Ct. App. 2012). We

5

determine whether a prosecutor's argument constitutes misconduct by referring to case law and the Rules of Professional Conduct. *Id*. "'The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct.'" *Id.* (quoting *Cooper*, 854 N.E.2d at 835).

Fundamental error is an extremely narrow exception to the contemporaneous objection rule that allows a defendant to avoid waiver of an issue. *Id.* "For a claim of prosecutorial misconduct to rise to the level of fundamental error, it must 'make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process and present an undeniable and substantial potential for harm.'" *Id*. (quoting *Booher v. State*, 773 N.E.2d 814, 817 (Ind. 2002)).

Kimes argues that the State's comments during its closing argument were prosecutorial misconduct because the State encouraged the jury to convict Kimes out of its care and concern for children in general and for A.G. in particular. He further contends that the State's comments suggested that the jury had a duty to help A.G. rather than determine Kimes's guilt or innocence. Kimes asserts that this misconduct constituted fundamental error because it was "a clearly blatant violation of basic and elementary principles of due process, presented an undeniable and substantial potential for harm, and made a fair trial impossible." *Appellant's Br*. at 16.

During its rebuttal of Kimes's closing argument, the State made the following argument:

> Between the time period when this happened to [A.G.] and when she told her mother and talked to the authorities, she urinated, she defecated, she bathed, she showered, she wiped, her mother did laundry. And oh, by the way, it

6

was saliva to begin with. Which isn't gonna stand the test of time the way other materials are going to. So what? So we don't care? So that's what we're gonna say to [A.G.]? We don't care. You should have told that next day. You should have never wiped, you should have never bathed. We don't care? Is that what we're here to do today? Kids, we don't care. This is your fault. I understand the question. I get it. It would have been great if she told us that day so we could get that stuff. Don't think I don't want it. But the reason for the law of a single eyewitness is because of stuff like this. Because in World War II there was a rule for Jewish kids, when they heard the sirens going off . . .

A/V Recording of 7/29/13 at 5:18:35-19:32. Kimes then objected, claiming that the State's argument was misconduct. The objection was overruled at that time, and the State continued as follows:

There was a rule that people would keep their doors open so that when sirens went off, kids could run into your home. And it didn't have to be their home. They could run into your home. And the reason for that is because as a society, we care about kids, we do.

A/V Recording of 7/29/13 at 5:20:00-15. Kimes again objected, stating that "this is a call to a law and order and not the evidence in this case." A/V Recording of 7/29/13 at 5:20:15-21. The State responded that it was explaining why Indiana has a rule that allows a conviction to rest on a single witness's testimony and likened the open-door rule's concern for children to the law that allows the testimony of only one eyewitness to be sufficient for a conviction. A/V Recording of 7/29/13 at 5:20:22-31. The trial court overruled Kimes's objection and admonished the jury:

I'll overrule the objection, ladies and gentlemen, and again remind you of the court's instruction that the lawyers, neither one of them, are presenting evidence. They are presenting argument in an attempt to persuade you. You can either accept or reject. They are free to argue by analogy. And I'll overrule the objection at this point.

State: Because the people that we voted for care about kids. And it's for stuff like this.

A/V Recording of 7/29/13 at 5:20:31-56. Kimes did not request an admonishment or move for a mistrial. Kimes also points to further argument by the State in its rebuttal in which the State said the following:

> We tell our children to tell us the truth about what happened and we will take care of it and she has done that. She told her mother; she told her father. They acted appropriately. And she told [the Department of Child Services] and law enforcement. She told us and she has come in here, and in front of him [pointing to Kimes], after being warned repeatedly she would be punished if she lied, she has told you. We tell them that we will help them. I am asking you to help her and find him guilty on both counts.

A/V Recording of 7/29/13 at 5:27:40-5:28:16. Kimes made no objection to this statement.

Assuming without deciding that these arguments were misconduct, we find that they do not rise to the level of fundamental error. For a claim of prosecutorial misconduct to constitute fundamental error, it must make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process and present an undeniable and substantial potential for harm. *Nichols*, 974 N.E.2d at 535. Here, the jury heard testimony by A.G. that while she was sleeping in Kimes's bedroom on the floor, she woke up because Kimes was touching her "bad part," which is what she called her vagina. A/V Recording of 7/29/13 at 2:09:20, 2:10:51, 2:11:57. A.G. saw Kimes's mouth on her bad part and felt him put his tongue inside of her vagina. She said that, "it felt icky and slimy." A/V Recording of 7/29/13 at 2:14:57. At some point later in 2011, the girls no longer wanted to stay with Kimes anymore. About a year later, A.G. told her mother what Kimes had done. Although A.G.'s testimony may have varied on some of the details

8

surrounding the molestation, she consistently told her mother, father, law enforcement, and the jury that Kimes molested her.

Additionally, the trial court instructed the jury as follows: "When the evidence is completed the attorneys may make final arguments. These final arguments are not evidence. The attorneys are permitted to characterize the evidence, discuss the law and attempt to persuade you to a particular verdict. You may accept or reject those arguments as you see fit." *Appellant's App.* at 62. Then later, after Kimes objected to the State's arguments, the trial court admonished the jury that, "I'll overrule the objection, ladies and gentlemen, and again remind you of the court's instruction that the lawyers, neither one of them, are presenting evidence. They are presenting argument in an attempt to persuade you. You can either accept or reject. They are free to argue by analogy." A/V Recording of 7/29/13 at 5:20:31-46. In light of the trial court's instruction and later statement that arguments made by attorneys are not evidence and that the members of the jury may accept or reject those arguments as they see fit and in light of the evidence presented at the trial, we conclude that although the State's comments may have constituted prosecutorial misconduct, such misconduct did not amount to fundamental error. *See, e.g., McCann v. State,* 742 N.E.2d 998, 1003 (Ind. Ct. App. 2001) ("While considered as a whole the prosecutor's closing statements may have pushed the bounds of zealous advocacy, we find nothing about the statements to be so egregious as to rise to fundamental error."), *summarily aff'd in pertinent part by McCann v. State,* 749 N.E.2d 1116 (Ind. 2001).

## II.  Mitigating Factor

Trial courts are required to enter sentencing statements whenever imposing sentence for a felony offense.  *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007).  The statement must include a reasonably detailed recitation of the trial court's reasons for imposing a particular sentence.  *Id*.  If the recitation includes a finding of aggravating or mitigating circumstances, then the statement must identify all significant mitigating and aggravating circumstances and explain why each circumstance has been determined to be mitigating or aggravating.  *Id*.  Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion.  *Id*.  An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom."  *Id*.

A trial court may abuse its discretion by entering a sentencing statement that omits mitigating factors that are clearly supported by the record and advanced for consideration.  *Id*. at 490-91.  Because the trial court no longer has any obligation to "weigh" aggravating and mitigating factors against each other when imposing a sentence, a trial court cannot now be said to have abused its discretion in failing to "properly weigh" such factors.  *Id*. at 491.  Once the trial court has entered a sentencing statement, which may or may not include the existence of aggravating and mitigating factors, it may then "impose any sentence that is . . . authorized by statute; and . . . permissible under the Constitution of the State of Indiana."  Ind. Code § 35-38-1-7.1(d).

The finding of mitigating factors is not mandatory and rests within the trial court's discretion. *Storey v. State*, 875 N.E.2d 243, 252 (Ind. Ct. App. 2007), *trans. denied*. "The trial court is not obligated to accept the defendant's arguments as to what constitutes a mitigating factor." *Id*. Additionally, the trial court is not required to attribute the same weight to proffered mitigating factors as the defendant does. *Id*. Nonetheless, the trial court may not ignore factors in the record that would mitigate an offense. *Id*. To fail to find mitigating circumstances that are clearly supported by the record may imply that the trial court did not consider those circumstances. *Id*. In order to prevail upon appeal, the defendant must establish that the mitigating evidence is both significant and clearly supported by the record. *Id*.

Kimes argues that the trial court abused its discretion in sentencing him. He contends that the trial court failed to include a mitigating factor that was clearly supported by the record and advanced for consideration. He asserts that the trial court should have taken into consideration that he had significant mental health problems and physical problems and that incarceration would likely cause a "great downturn in his physical and mental condition." *Appellant's Br*. at 19.

In the present case during sentencing, the trial court cited Kimes's limited criminal history and mental health needs as mitigating circumstances. A/V Recording of 8.15.13 at 10:42:07, 10:42:51-43:00. The trial court recommended that Kimes receive mental health treatment while incarcerated. A/V Recording of 8/15/13 at 10:42:58. The trial court also noted that whether Kimes would be able to pay probation fees after serving his executed

time would be subject to how he is physically and mentally upon his release. A/V Recording of 8/15/13 at 10:44:45-45:20.

The trial court clearly and specifically mentioned Kimes's mental and physical health when it sentenced him. We, therefore, cannot conclude that the trial court abused its discretion in failing to consider those factors in sentencing Kimes. Kimes's argument seems to be a request for this court to assess whether the trial court gave proper weight to this mitigating circumstance. However, because the trial court no longer has any obligation to weigh aggravating and mitigating factors against each other when imposing a sentence, it cannot be said to have abused its discretion in failing to properly weigh such factors. *Anglemyer*, 868 N.E.2d at 491. The trial court did not abuse its discretion in sentencing Kimes.

### III. Inappropriate Sentence

Appellate courts may revise a sentence after careful review of the trial court's decision if they conclude that the sentence is inappropriate based on the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). Even if the trial court followed the appropriate procedure in arriving at its sentence, the appellate court still maintains a constitutional power to revise a sentence it finds inappropriate. *Hope v. State*, 834 N.E.2d 713, 718 (Ind. Ct. App. 2005). The defendant has the burden of persuading the appellate court that his sentence is inappropriate. *King v. State*, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008).

Kimes argues that his sentence is inappropriate in light of the nature of the offense and the character of the offender. He contends that the facts of the present offense make it

12

less egregious than other molestations in that he did not threaten or use deadly force, was not armed with a deadly weapon, did no physical harm to the victim, and did not facilitate the offense by giving the victim drugs. He further claims that his sentence should be reduced in light of his character because he had a minimal criminal history, he was abused by relatives in the past, he had poor mental health, he was a recovering alcoholic, and he was low risk for reoffending.

Kimes was convicted of one count of Class A felony child molesting. A person who commits a Class A felony shall be imprisoned for a fixed term of between twenty and fifty years with the advisory sentence being thirty years. Ind. Code § 35-50-2-4. The trial court sentenced Kimes to a term of thirty years in the Indiana Department of Correction with six years suspended. As to the nature of the offense, Kimes was in a position of trust over his granddaughter, who he was caring for on the weekends, when the offense occurred. Additionally, A.G. was much younger than was necessary to elevate Kimes's conviction to a Class A felony; she was between the ages of three to five years old when Kimes molested her. As to Kimes's character, he did have a minimal criminal history, consisting of two misdemeanor convictions from many years prior. The trial court also noted that Kimes suffered mental health problems. We do not believe that Kimes's sentence of thirty years, with six years suspended, is inappropriate in light of the nature of the offense and the character of the defendant.

Affirmed.

MAY, J., and BRADFORD, J., concur.