## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 08 2020, 8:54 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Alex M. Ooley
Borden, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Bradley D. Haub,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | July 8, 2020<br><br>Court of Appeals Case No.<br>20A-CR-13<br><br>Appeal from the Washington<br>Superior Court<br><br>The Honorable Frank Newkirk,<br>Jr., Judge<br><br>Trial Court Cause No.<br>88D01-1810-F5-840 |

**Tavitas, Judge.**

## Case Summary

[1]     Bradley Haub appeals his conviction for bribery, a Level 5 felony.  We affirm.

## Issue

Haub raises one issue for our review, which we revise and restate as whether the deputy prosecutor committed misconduct which resulted in fundamental error.

## Facts

On July 23, 2018, Haub, pro se, filed a federal lawsuit (the "Federal Case") in the United States District Court for the Southern District of Indiana against Sheriff Rodger Newlon, Nurse Mike Pelayo, Officer Dustyn Miller, and the Washington County Sheriff's Department (the "Sheriff's Department"). In the Federal Case, Haub alleged he failed to receive necessary medical care while in custody at the Washington County Jail. Haub sought damages totaling approximately $502,500.00, and apologies from the defendants.

On July 27, 2018, the district court dismissed Haub's claims in the Federal Case against Sheriff Newlon and the Sheriff's Department for failure to state a claim upon which relief could be granted. The claims against Officer Miller and Nurse Pelayo remained. On September 7, 2018, Haub filed a motion to amend the complaint in the Federal Case and sought to add claims against Sheriff Newlon and the Sheriff's Department. In his amended complaint, Haub sought: $500,000.00 from the Sheriff's Department; $5,000.00 personally from Sheriff Newlon; $5,000.00 personally from Officer Miller; $5,000.00 personally from Nurse Pelayo; and an additional $2,500.00, totaling $517,500.00 in damages. Haub also maintained his request for apologies from all parties.

On September 10, 2018, Haub met with Sheriff Newlon at the Washington County Jail regarding the Federal Case.[1]  The meeting was recorded.  During the meeting, Haub told Sheriff Newlon that Haub would "be willing to drop" the Federal Case if Sheriff Newlon would "talk to the prosecutor [and] see about maybe getting [Haub on] house arrest."[2] Tr. Vol. II pp. 233-34.  At the time Haub and Sheriff Newlon met, Haub was completing a sentence in the Washington County Jail; however, he wanted to complete his sentence on home incarceration.

After speaking with Sheriff Newlon, Detective Josh Banet and Trooper Justin Smith with the Indiana State Police interviewed Haub.[3]  Haub again told Detective Banet and Trooper Smith that he would be willing to dismiss the Federal Case in exchange for a written apology and an opportunity to be placed on home incarceration for the last six months of his sentence.

On September 25, 2018, the district court dismissed the claims in the amended complaint against the Sheriff's Department in the Federal Case for failure to state a claim upon which relief could be granted; however, the district court

---

[1] Based on the exhibits introduced at sentencing, it appears that Haub was serving a 730-day sentence in the Washington County Jail for his conviction, pursuant to a plea agreement, for theft, a Level 6 felony.

[2] Haub also told Sheriff Newlon in the meeting that Haub "got documentation back from Federal Court saying they're going to go ahead with [Haub's] lawsuit proceeding."  Tr. Vol. II p. 233.

[3] It appears that Detective Banet and Trooper Smith were present in a nearby room at the jail while Sheriff Newlon was speaking with Haub.  According to Detective Banet's testimony, he was at the jail to "investigate" but was not sure of the exact nature of why he was present that day.  Tr. Vol. II p. 240.  Haub was read his *Miranda* rights prior to the interview with Detective Banet and Trooper Smith.

allowed the claims against Sheriff Newlon in the amended complaint to proceed. On October 9, 2018, Haub filed a "motion requesting to stop all proceedings against defendants due to mutuial [sic] agreement between all parties" in the Federal Case. Tr. Ex. Vol. IV p. 97. On October 10, 2018, the district court interpreted Haub's motion to be a voluntary dismissal pursuant to Rule 41(a) of the Federal Rules of Civil Procedure and granted Haub's motion to dismiss.

[8] In October 23, 2018, the State charged Haub with bribery, a Level 5 felony,[4] and the State alleged Haub was an habitual felony offender.[5] On March 22, 2019, Haub filed a "motion requesting action" in the Federal Case and asked the district court to reinstate his claims against Sheriff Newlon. *Id.* at 102. The district court denied Haub's motion on March 25, 2019, stating that Haub must file a new complaint if he wished to relitigate his previously dismissed claims.

[9] Haub's jury trial on the State bribery charges occurred in August 2019. In the State's opening statement, the deputy prosecutor referred to Haub's statement that he would dismiss the Federal Case in exchange for Sheriff Newlon speaking with the prosecutor to obtain a grant of home detention, which constituted the bribe, in relevant part as follows:

---

[4] An amended information was filed July 29, 2019.

[5] The initial habitual offender allegation was filed December 12, 2018. An amended habitual felony offender allegation was filed May 21, 2019.

It's just like a duffle [sic] bag full of cash. On September 10, 2018 the defendant went to the Washington County Sheriff, who at that time was Roger Newlon, and offered him a bribe. This was the bribe. The defendant was serving a sentence in jail. During that time he filed a Federal Lawsuit against the Sheriff, and the Sheriff's Department, and the Jail Nurse, and the Jail Correction's Officer claiming that they had neglected him medically. And he was demanding Five Hundred Thousand Dollars ($500,000.00) from the county, Five Thousand ($5,000.00) from the sheriff personally, Five Thousand Dollars ($5,000.00) from the corrections officer, and Seven Thousand Five Hundred Dollars ($7,500.00) from the nurse. After filing that, making those demands, he went to the sheriff and he said, sheriff I'll drop that lawsuit if you get me out of jail. That's a bribe. It's that simple. That's why this case is not going to take very long. Is that illegal? It was illegal for the defendant to offer, it would have been illegal for the sheriff to accept it. It's just as if he walked into the Sheriff with a duffle [sic] bag full of cash. So, based on those facts, we charged the defendant with bribery.

Tr. Vol. II pp. 205-06. Haub did not object during the State's opening statement. In its case-in-chief, the State introduced a certified copy of Haub's federal complaint and several other documents regarding the Federal Case. The entire exhibit spanned approximately ninety pages and included documents demonstrating the dismissal and attempted reinstatement of Haub's Federal Case.

[10] At the close of the State's case-in-chief, Haub moved for a directed verdict, which the trial court denied. In rebuttal closing arguments, the State argued, in relevant part:

And now we've talked, the defense has talked about that that lawsuit had no value. And I want you to think about how we talked about that in jury selection. And think about what we said about if you're sued. What fear you have in your mind when you see it, even if you know you didn't do anything wrong. It's a terrible thing to be sued. Imagine being sued for Five Hundred and Seventeen Thousand and Five Hundred Dollars ($517,500.00). And what that would do [to] you, to your stress level, worrying about am I going to have to pay this money. And then ask yourself if a lawsuit has any value. It doesn't matter, see one of the things that [the] defense tries to do is push us to the end of this thing and say well nothing ever happened. Bribery really wasn't because the insurance company was going to cover it. So, no harm, no foul.

* * * * *

Not, the defendant is not [sic] arguing Washington County should pay [in the Federal Case], which by the way is you. The defendant is arguing Washington County should pay and Roger Newlon should pay, out of his pocket. And Mike Pelayo should pay out of his pocket. And Dustyn Miller should pay out of his pocket. And they should apologize to him. That's what he's saying.

* * * * *

What you witnessed is remarkable, if you voted for Roger Newlon you just observed confirmation that your vote was correct. Cause [sic] this man, full of integrity and honor, was offered the opportunity to get rid of this terrible problem for the county, for him, for Dustyn Miller, and for Mike Pelayo and he said Brad, I shouldn't go there. That's wonderful that he did that. And to find the defendant not guilty is dishonoring that choice that he made. That's the choice we want our sheriff to

make, that's why we elected a man like Roger Newlon to be sheriff.

\* \* \* \* \*

If it had worked, think of this when you're back there. If [it] had worked, is that okay? Is that how you want things to work? (JUROR'S NAME) sat here, one of the potential jurors and said oh there's two problems with that. Very insightful young woman, she said, first of all it's not fair to everybody else. Because not everybody has money to trade for special favors. Not everybody has a lawsuit that they can file to trade for special favors, it would be terribly unfair to the other hundred and fifty inmates in jail. And then she said secondly it would create an incentive to cook up these lawsuits and file them so you do have something to trade. Is that the world we want? You all told me no, we like America. We like the American system. We don't like people trading things of value for special treatment.

\* \* \* \* \*

It's just like he walked in there with a duffle [sic] bag full of cash, cause that's what this is. Five Hundred and Seventeen Thousand and Five Hundred Dollars ($517,500.00). I can make this go away if you get me out of jail. It's a bribe. It's that simple. It's illegal, improper, it's illegal for him to offer it and illegal for the sheriff to accept it. It's just like Brad Haub walked in there with a duffel bag full of cash. Thank goodness, thank goodness that the sheriff didn't accept it. I want you to ratify Roger Newlon's decision. I want you to say, thank you Roger you were right.

Tr. Vol. III pp. 21-25. Haub, again, did not object during the State's closing arguments.

[11] The jury found Haub guilty of bribery. Haub admitted to being an habitual offender, and the parties agreed Haub's habitual offender enhancement would be no more than four years. On December 5, 2019, the trial court sentenced Haub to four years for the bribery conviction and enhanced the sentence by three years for being an habitual offender, for an aggregate of seven years at the Indiana Department of Correction ("DOC"). Haub appeals his conviction for bribery.

## Analysis

[12] Haub alleges that the deputy prosecutor committed misconduct when he made repeated references to the value of Haub's Federal Case and urged the jury to find Haub guilty for reasons other than Haub's guilt. When reviewing a claim of prosecutorial misconduct, we must determine whether the prosecutor: (1) engaged in misconduct that, (2) under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been otherwise subjected. *Ryan v. State,* 9 N.E.3d 663, 667 (Ind. 2014); *see also Nichols v. State,* 974 N.E.2d 531, 535 (Ind. Ct. App. 2012). "'Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct.'" *Nichols,* 974 N.E.2d at 535 (quoting *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006)). We measure the weight of the peril by the probable persuasive effect of the misconduct on the jury rather than the degree of impropriety of the conduct. *Id.*

[13] Haub, however, did not object during any portion of the jury trial that he now alleges constitutes prosecutorial misconduct. "Our standard of review is

different where a claim of prosecutorial misconduct has been procedurally defaulted for failure to properly raise the claim in the trial court, that is, *waived* for failure to *preserve* the claim of error." *Ryan,* 9 N.E.3d at 667 (citations omitted and emphasis supplied). "The defendant must establish not only grounds for prosecutorial misconduct but must also establish that the prosecutorial misconduct constituted fundamental error." *Id.* at 667-68. "Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to make a fair trial impossible." *Id.* at 668 (quotations omitted).

### A. Value of the Federal Case

[14] Haub first argues the deputy prosecutor committed misconduct when: (1) he failed to disclose that the district court initially dismissed Haub's claims against Sheriff Newlon and the Sheriff's Department in the Federal Case; (2) he compared the damages sought in the Federal Case to a duffel bag full of cash; and (3) he discussed the stress of being subjected to a half-a-million-dollar lawsuit. Haub argues these statements were false, misleading, and violated Indiana Professional Conduct Rule 3.3(a)(1)[6] regarding the duty of candor.

[15] Pursuant to Indiana Code Section 35-44.1-1-2(a)(1), a person who:

---

[6] Indiana Rule of Professional Conduct 3.3(a)(1) states that a "lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer. . . ."

confers, offers, or agrees to confer on a public servant, either before or after the public servant becomes appointed, elected, or qualified, any property, except property the public servant is authorized by law to accept, with intent to control the performance of an act related to the employment or function of the public servant or because of any official act performed or to be performed by the public servant, former public servant, or person selected to be a public servant;

commits bribery, a Level 5 felony. Pursuant to Indiana Code Section 35-31.5-2-253, "property" is defined as: "anything of value[,]" and includes:

(1) a gain or advantage or anything that might reasonably be regarded as such by the beneficiary;

(2) real property, personal property, money, labor, and services;

(3) intangibles;

(4) commercial instruments;

(5) written instruments concerning labor, services, or property;

(6) written instruments otherwise of value to the owner, such as a public record, deed, will, credit card, or letter of credit;

(7) a signature to a written instrument;

(8) extension of credit;

(9) trade secrets;

(10) contract rights, choses-in-action, and other interests in or claims to wealth;

(11) electricity, gas, oil, and water;

(12) captured or domestic animals, birds, and fish;

(13) food and drink;

(14) human remains; and

(15) data.

[16] First, we fail to understand how the deputy prosecutor's arguments were not truthful insofar as they alleged that the Federal Case had value. Specifically, at the time Haub met with Sheriff Newlon, Haub had filed an amended complaint in the Federal Case seeking damages of $517,000.00. While it is true that Sheriff Newlon and the Sheriff's Department had been previously dismissed as defendants on Haub's first complaint, the district court had not yet rendered a decision on Haub's motion to amend his complaint at the time of Haub's meeting with Sheriff Newlon.

[17] Moreover, the State introduced Exhibit A, which was a certified copy of the documents filed in the Federal Case. The jury had access to this exhibit and was advised to review all evidence, including the exhibits, in reaching their decision. These documents included the district court's initial dismissal of the

Sheriff's Department and Sheriff Newlon and Haub's motion to amend.[7] The fact that the exhibit was lengthy does not mean the deputy prosecutor was trying to "bur[y]" the previous dismissal in the exhibit and mislead the tribunal. Appellant's Reply Br. p. 6.

[18] The fact the deputy prosecutor did not spell out the exact series of events that occurred in Haub's Federal Case does not warrant a finding of prosecutorial misconduct. At the time Haub bribed Sheriff Newlon, a lawsuit for $517,000.00 against several defendants, including a $5,000.00 claim against Sheriff Newlon personally, was pending in the district court. The jury had all the information available to it in order to make the decision regarding the value—if any at all—of Haub's Federal Case as it related to the allegations of bribery.[8] Under these facts, we cannot find that the deputy prosecutor committed prosecutorial misconduct in making his argument regarding the value of the lawsuit. Haub has failed to demonstrate error, much less fundamental error.

### B. Reason to Find Haub Guilty

[19] Haub next argues that the deputy prosecutor committed misconduct by asking the jury to find Haub guilty based upon facts other than Haub's guilt. The basis for Haub's claim is based on when the deputy prosecutor: (1) stated that "the

---

[7] Exhibit A also included documents filed and orders issued after Haub's discussion with Sheriff Newlon as a complete record of the Federal Case.

[8] Haub does not argue on appeal that the evidence regarding the element of "value" was insufficient.

jury, as taxpayers, might have to pay for the federal lawsuit"; (2) stated that "the jury should honor the sheriff's decision by finding guilt"; (3) "suggested that a finding of not guilty would incentivize other inmates to cook up these lawsuits"; and (4) "suggested that a finding of guilt was a way for the jury to thank the sheriff." Appellant's Br. pp. 13-14 (internal citations omitted).

[20] Haub compares these statements to the statement made by the deputy prosecutor in *Ryan,* 9 N.E.3d at 672.[9] In *Ryan,* the deputy prosecutor argued in closing arguments:

> You wonder at night what you can say to a jury to get them to get the bigger picture here. And no case is easy for your [sic] guys, I get that. No one wants to judge someone else or somebody else's actions. But we keep hearing about this happening, whether it's a teacher, or a coach, or a pastor, or whoever. And we all want to be really angry and post online and have strong opinions about it. And we never think that we'll be the ones that are here that get to stop it. And you actually do get to stop it. And as much as I know you probably did not want to be here on Monday morning, I would submit to you that you are in an incredible position to stop it and send the message that we're not going to allow people to do this.

*Ryan,* 9 N.E.3d at 671. Our Supreme Court held that, "[a]lthough a prosecutor may remark on the public demand for a conviction, we have repeatedly emphasized that 'it is misconduct for a prosecutor to request the jury to convict

---

[9] There were several instances of alleged prosecutorial misconduct in *Ryan*; however, we will only focus on the statement Haub compares to his case.

a defendant for any reason other than his guilt.'" *Id.* (quoting *Cooper v. State,* 854 N.E.2d 831, 837 (Ind. 2006)). Accordingly, our Supreme Court concluded that this statement by the deputy prosecutor constituted misconduct; however, the Court found the statement did not rise to the level of fundamental error, noting that the preliminary and final instructions correctly admonished the jury that its decision should rest on the evidence admitted at trial.

[21] In comparing *Ryan* to Haub's case, we, like our Supreme Court, fail to see how Haub was denied a fair trial as a result of the statements. While we acknowledge that some of the deputy prosecutor's remarks are comparable to the ones made in *Ryan*, we do not find that Haub suffered fundamental error as a result. As in *Ryan,* the preliminary and final jury instructions in Haub's case instructed the jury that: (1) the State must prove each element of the crime beyond a reasonable doubt; (2) statements made by the attorneys are not evidence; and (3) the jury's decision should be based on the law and facts instead of bias or sympathy. Moreover, the prosecutor also explained the elements of the bribery charge and discussed the evidence presented proving each element.

[22] Finally, "[w]here there is overwhelming independent evidence of a defendant's guilt, error made by a prosecutor during the closing argument is harmless." *Jerden v. State,* 37 N.E.3d 494, 500 (Ind. Ct. App. 2015) (citing *Coleman v. State,* 750 N.E.2d 370, 375 (Ind. 2001)). Here, the jury was shown the video depicting the bribery wherein Haub offered to dismiss the Federal Case in exchange for Sheriff Newlon's agreement to speak to the prosecutor regarding

placing Haub on home incarceration.[10] There was "overwhelming independent evidence" of Haub's guilt, which requires us to find that the deputy prosecutor's statements did not rise to the level of fundamental error. *See Jerden,* 37 N.E.3d at 500.

[23] Based on the foregoing, we cannot say that the deputy prosecutor's remarks constituted errors that were "so prejudicial to [Haub's] rights as to make a fair trial impossible." *Ryan,* 9 N.E.3d at 668. The improper statements did not result in fundamental error.

## Conclusion

[24] Haub has not demonstrated that the deputy prosecutor's remarks gave rise to fundamental error. Accordingly, we affirm.

[25] Affirmed.

Riley, J., and Mathias, J., affirmed.

---

[10] On appeal, Haub does not challenge the sufficiency of the evidence with regard to the elements of the offense.