FILED

Jul 09 2020, 8:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

M. Slaimon Ayoubi
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James W. Combs,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | July 9, 2020<br><br>Court of Appeals Case No.<br>19A-CR-1991<br><br>Appeal from the Boone Superior<br>Court<br><br>The Honorable Bruce E. Petit,<br>Judge<br><br>Trial Court Cause No.<br>06D02-1702-F3-134 |

**Tavitas, Judge.**

## Case Summary

[1] James Combs appeals his convictions for Counts I, II, and III, possession of narcotic drugs, Level 3 felonies; Count V, operating a vehicle while intoxicated

endangering a person, a Class A misdemeanor; Count VI, operating a vehicle while intoxicated, a Class C misdemeanor; Count VII, operating a vehicle with a schedule I or II controlled substance or its metabolite in the body, a Class C misdemeanor; Count VIII, leaving the scene of an accident, a Class B misdemeanor; and Count IX, public intoxication, a Class B misdemeanor. We affirm in part, reverse in part, and remand.

## Issues

Combs raises six issues on appeal; however, we consolidate and restate the issues as follows:

I.  Whether the trial court erred in admitting certain evidence.

II.  Whether the trial court abused its discretion in failing to replace a juror with an alternate juror.

III.  Whether the prosecutor committed misconduct.

IV.  Whether the evidence is sufficient to sustain Combs' convictions.

## Facts

On February 11, 2017, Combs was driving his gold van when he swerved to avoid another vehicle and struck an electrical box in Lebanon. After the accident, Combs exited his vehicle and took photographs of the damage. Witnesses described Combs as "lethargic" and "quiet" at the scene of the accident. Tr. Vol. III p. 11. Witnesses also reported to law enforcement that

Combs looked for something under the driver's seat of the vehicle, was "rummaging around," and trying to "push things around." *Id.* at 13. Shortly thereafter, Combs left the scene.

[4] Officer James Koontz, a patrol officer with the Lebanon Police Department, responded to a dispatch call regarding the accident and arrived approximately two minutes later. Combs was not at the scene when Officer Koontz arrived. Witnesses directed Officer Koontz to a nearby neighborhood, to which Combs reportedly drove after the accident. Officer Koontz traveled to the neighborhood, where he observed a fluid trail and a damaged van.

[5] The van was parked in Combs' driveway and had a flat driver-side front tire; Officer Koontz observed that the fluid trail continued up the driveway to the van. Officer Koontz arrived as Combs stepped from the driver's seat of the van. Officer Koontz advised Combs to remove his hands from his pockets and asked if Combs had any weapons. Combs advised Officer Koontz he had three guns on his person, which Officer Koontz removed. Combs also stated that he intended to call the police about the accident.

[6] Officer Koontz requested Combs' identification. As Combs retrieved his identification from the van, Officer Koontz observed a knife in "the area between the two front seats." Tr. Vol. II p. 11. Officer Koontz asked Combs to step away from the van. As Officer Koontz questioned Combs about the accident, witnesses to the accident arrived at Combs' house. Officer Koontz

asked Combs for permission to search the van; however, Combs refused, unless Combs could hand Officer Koontz the items in the vehicle.

[7] During the conversation, Officer Koontz observed that Combs' eyes were glassy, Combs had pinpoint pupils, and Combs' speech was slowed. Officer Koontz did not detect any odors from Combs' breath; however, Officer Koontz became suspicious that Combs may be under the influence of medication or drugs. Accordingly, Officer Koontz proceeded with an investigation for operating while intoxicated. Several other officers arrived at the scene, including Lieutenant Rich Mount, with the Lebanon Police Department.

[8] Combs failed two of the field sobriety tests; however, a portable breath test was negative for alcohol. Officer Koontz asked if Combs took any prescription medication that day, and Combs advised that he took his prescribed Adderall medication. Officer Koontz read Combs the Indiana Implied Consent Law, and Combs agreed to submit to a chemical test.

[9] At some point after Combs was handcuffed to be transported for the chemical test,[1] but before Combs was taken to the hospital, Officer Koontz asked Combs if Officer Koontz could look under the front seat of his van. Combs initially consented to the officers looking under the front passenger seat of the van. The officers looked under the seat and found a black bag. Combs, however, told the

---

[1] At the hearing on the motion to suppress, Officer Koontz testified that he had detained Combs at this point; however, Combs was not under arrest.

officers that they could not look inside the bag. The officers then ended their search.

[10] As Officer Koontz transported Combs to the hospital for the chemical test, Lieutenant Mount telephoned the prosecutor's office from his vehicle. Lieutenant Mount remained with Combs' van to "figure out . . . what [officers] were gonna [sic] do with the [van]." *Id*. at 52. The officers learned that the van contained valuable items related to Combs' business.

[11] The officers called for the van to be towed, and an inventory search of the van was conducted while the van was still in the driveway. The inventory search yielded several personal items, including white pills in a clear bag,[2] and a prescription bottle belonging to Combs. The white pills were identified as Alprazolam, Hydrocodone, Oxycodone—all controlled substances. Some personal items collected from the van were turned over to Combs' wife at the scene. Two days later, Combs' van was also returned to his wife.

[12] Combs' urine drug screen revealed the presence of amphetamine, A-Hydroxyalprazolam, "which is a metabolite for Xanax," hydrocodone, oxycodone, and T.H.C. Tr. Vol. IV p. 66. The blood screen detected the presence of alprazolam and amphetamine.

---

[2] The white pills were found in the small black bag under the driver's seat.

[13] On February 13, 2017, the State charged Combs with Counts I, II, and III, possession of narcotic drugs,[3] Level 3 felonies; Count IV, possession of a controlled substance, a Level 6 felony; Count V, operating a vehicle while intoxicated endangering a person, a Class A misdemeanor; Count VI, operating a vehicle while intoxicated, a Class C misdemeanor; Count VII, operating a vehicle with a schedule I or II controlled substance or its metabolite in the body, a Class C misdemeanor; Count VIII, leaving the scene of an accident, a Class B misdemeanor; and Count IX, public intoxication, a Class B misdemeanor.

[14] On May 10, 2017, Combs filed a motion to suppress all evidence obtained from the search of Combs' van, which he claimed violated his rights pursuant to the Fourth and Fifth Amendments of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. On July 7, 2017, the trial court held a hearing on Combs' motion to suppress.

[15] At the hearing on the motion to suppress, Lieutenant Mount testified that he "was leaning towards towing [the van] as evidence because it was involved in the leaving the scene of a property damage accident," and police department policy allows impoundment when the vehicle is evidence of a crime.[4] Tr. Vol.

---

[3] These charges were based on the white pills found in Combs' van: Count I was for possession of hydrocodone; Count II was for possession of 10 milligrams of oxycodone pills; and Count III was for possession of 7.5 milligrams of oxycodone pills. Count IV was for possession of Alprazolam; however, Combs was found not guilty of Count IV.

[4] The Lebanon Police Department's written policy for impound and inventory of vehicles was admitted as an exhibit at the motion to suppress hearing.

II p. 53.  Lieutenant Mount then testified that officers were "definitely" going to arrest Combs for leaving the scene of a property damage accident after his blood draw at the hospital; therefore, officers began the process of impounding and inventorying the van.  *Id.* at 67.  When he was asked whether a less intrusive method was available to obtain the needed evidence, Lieutenant Mount testified that this procedure was "just [the department's] policy."  *Id.* at 70.

[16]  In closing arguments at the hearing on the motion to suppress, the State argued that the decision to impound Combs' van was "discretionary."  *Id.* at 85.  On August 9, 2017, the trial court issued an order denying Combs' motion to suppress.  The trial court found that the officers had probable cause to believe the van was connected to criminal activity, and thus, could seize the van without a warrant.

[17]  Combs filed a motion to reconsider on August 27, 2018.  The trial court entered an order again denying Combs' motion to suppress and found as follows:

> This Court finds that in this case under consideration, the State did not rely on the automobile exception to enter onto Defendant's property and seize evidence as was prohibited in *Collins v. Virginia*[, __ U.S. __, 138 S. Ct. 1663 (2018)].  The officer first to arrive at Defendant's residence was in fresh pursuit of the Defendant and his arrival at Defendant's residence occurred at the same time the alleged crime was unfolding.  These exigent circumstances allowed the officer to enter onto Defendant's property.  Additionally, the officer had probable cause to believe the Defendant had violated I.C. 9-26-1-1.1[ ] and further, had the authority to arrest the Defendant on his property

as a result. The obvious nature of Defendant's van as evidence of Leaving the Scene of an Accident allowed its seizure pursuant to the plain view doctrine. . . .

Appellant's App. Vol. II p. 115. Combs moved to certify the order for interlocutory appeal on September 26, 2018, which the trial court granted on September 28, 2018. Our Court denied jurisdiction over Combs' interlocutory appeal.

[18] At Combs' jury trial from May 14 to May 16, 2019, witnesses testified to the foregoing facts. Combs lodged a continuing objection to the evidence recovered from the van. At the trial, Lieutenant Mount again testified that law enforcement towed Combs' van as evidence of a crime. Lieutenant Mount testified that he did not obtain a warrant to search the van because obtaining a search warrant was "a pain in the a**." Tr. Vol. III p. 169. Also during his testimony, Lieutenant Mount acknowledged that Combs admitted his involvement in the accident; however, when pressed about why the van would need to be seized given Combs' admission, Lieutenant Mount testified that he was unsure and that Combs may have initially denied any involvement in the accident. The jury found Combs not guilty of Count IV, but guilty of the remaining counts. Combs now appeals.

## Analysis

### I. *Admission of Evidence*

[19] "The general admission of evidence at trial is a matter we leave to the discretion of the trial court." *See Clark v. State*, 994 N.E.2d 252, 259-60 (Ind. 2013). "We

review these determinations for abuse of that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." *Id.* at 260.

### A. Search of Combs' Vehicle

[20] Combs argues that his Fourth Amendment rights were violated when police searched his vehicle without a warrant.[5] Because Combs appeals from a completed jury trial rather than the denial of his motion to suppress, the issue is more appropriately framed as whether the trial court properly admitted the evidence at trial. *See Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013). We review the trial court's conclusions on the admission of evidence for an abuse of discretion. *See id.* at 260. "However, when a challenge to an evidentiary ruling is predicated on the constitutionality of a search or seizure of evidence, it raises a question of law that is reviewed de novo." *Curry v. State, 90 N.E.3d 677, 683 (Ind. Ct. App. 2017), trans. denied* (citations omitted). "The State has the burden to demonstrate that the measures it used to seize information or evidence were constitutional." *Id.*

[21] The Fourth Amendment to the United States Constitution protects citizens against unreasonable searches and seizures by prohibiting them without a

---

[5] Combs also argued in his motion to suppress that the search was improper under Article 1, Section 11 of the Indiana Constitution. Combs, however, does not articulate an Indiana Constitution argument in his brief as required. *See Abel v. State,* 773 N.E.2d 276, 278 n.1 (Ind. 2002) ("Because Abel presents no authority or independent analysis supporting a separate standard under the state constitution, any state constitutional claim is waived."). Accordingly, we agree with the State that this argument is waived. *See* Ind. Appellate Rule 46(A).

warrant supported by probable cause. U.S. Const. amend. IV. "The fundamental purpose of the Fourth Amendment to the United States Constitution is to protect the legitimate expectations of privacy that citizens possess in their persons, their homes, and their belongings." *Taylor v. State*, 842 N.E.2d 327, 330 (Ind. 2006). This protection has been "extended to the states through the Fourteenth Amendment." *Bradley v. State*, 54 N.E.3d 996, 999 (Ind. 2016). "As a deterrent mechanism, evidence obtained in violation of this rule is generally not admissible in a prosecution against the victim of the unlawful search or seizure absent evidence of a recognized exception." *Clark*, 994 N.E.2d at 260.

[22] The State argues that the officers lawfully viewed Combs' van without conducting a search under the Fourth Amendment and, therefore, the seizure of Combs' van was valid under the open view doctrine as evidence of a crime.[6] This argument diverges from the trial court's order,[7] which allowed seizure of the vehicle under the *plain view* doctrine rather than the *open view* doctrine.

---

[6] The State also argues that Combs waived this argument by failure to raise a cogent argument in his briefs. Combs' substantive analysis on this issue spans one sentence. We, however, will address the issue because, although appellant's brief was severely lacking, the arguments made at trial and in the motion to suppress on this issue are sufficient for us to conduct a meaningful review. Although we address this issue, we again instruct counsel to review Indiana Appellate Rule 46, specifically, the requirement for cogent arguments.

[7] We note that the State has advanced several theories for the search of the vehicle, and the trial court denied the suppression of the evidence on varying theories. Specifically, Lieutenant Mount initially testified that "he was leaning toward towing [the van] as evidence of a crime and that the subsequent inventory search was done pursuant to policy, tr. vol. II p. 53; however, Lieutenant Mount also testified that the officers decided what they were going to do with the vehicle once they arrested Combs, which implies that the search was incident to arrest. At the hearing on the motion to suppress, the State argued the seizure was a discretionary

> Often confused with the plain view doctrine is the concept of 'open view,' which is used in situations in which a law enforcement officer sees contraband from an area that is not constitutionally protected, but rather is in a place where the officer is lawfully entitled to be. In such situations, anything that is within 'open view' may be observed without having to obtain a search warrant because making such 'open view' observations does not constitute a search in the constitutional sense. Nonetheless, in order to lawfully seize items in 'open view,' it may be necessary to obtain a search warrant or be able to justify a warrantless seizure under an exception to the warrant requirement.

*McAnalley v. State*, 134 N.E.3d 488, 501 (Ind. Ct. App. 2019), *trans. denied*.

[23] In *Houser v. State,* 678 N.E.2d 95, 101 (Ind. 1997), our Supreme Court held that a warrant is not required to seize incriminating evidence under the plain view doctrine

> if the following conditions are met: (1) police have a legal right to be at the place from which the evidence can be plainly viewed; (2) the incriminating character of the evidence is immediately apparent; and (3) police have a lawful right of access to the object itself.

*Houser*, 678 N.E.2d at 101. "The immediately apparent prong of the doctrine requires that the officer have probable cause to believe the evidence will prove useful in solving a crime." *Wilkinson v. State*, 70 N.E.3d 392, 402 (Ind. Ct. App.

---

impound. The trial court denied Combs' motion to suppress, then denied Combs' motion to reconsider and found the State did not rely on the automobile exception, but instead, the plain view doctrine. On appeal, the State argues only that the open view doctrine applies.

2017) (quotations omitted). "Probable cause requires only that the information available to the officer would lead a person of reasonable caution to believe the items could be useful as evidence of a crime. A practical, nontechnical probability that incriminating evidence is involved is all that is required."[8] *Taylor v. State*, 659 N.E.2d 535, 539 (Ind. 1995) (quotations and citations omitted).

[24] We do not find the open view or plain view doctrines to be operable here. It is clear from the record that the towing and impound search of the vehicle were merely pretextual means by which officers could search the vehicle to find incriminating evidence.

[25] Witnesses reported to officers that Combs looked for something under his seat, and Officer Koontz asked to search the vehicle early in his investigation. Combs declined to consent. The vehicle was parked in Combs' driveway, and officers had time to procure a warrant before searching the vehicle, but they declined to do so due to the inconvenience. At the hearing on the motion to suppress, Lieutenant Mount initially testified that the officers seized the vehicle as evidence of a crime. Photographs of the vehicle, however, were not admitted into evidence at trial, and the record reveals that the vehicle was returned to Combs' wife two days after it was towed from Combs' driveway.

---

[8] We observe that the State's argument and the cases the State cites discuss probable cause in the context of the open view doctrine and not the automobile exception. Accordingly, we will focus on this area of probable cause in our opinion as well.

[26]     Combs admitted that he was going to contact law enforcement regarding the accident; therefore, it is not clear why the officers needed the van to solve the crime. The State presented no evidence that the van would "prove useful in solving" the investigations into the charges of leaving the scene of an accident or driving while intoxicated. *Wilkinson,* 70 N.E.3d at 402. The damage was on the outside of the vehicle and photographs of the vehicle could have preserved the evidence. Nothing in the record indicates that the officers had probable cause to believe the van contained evidence that was related to the offenses being investigated.

[27]     The record supports the finding that the officers' inventory search was a pretext for searching Combs' van.[9] *See Fair,* 627 N.E.2d at 436 (finding the inventory search at issue "presents several indicia of pretext which raise a question about whether it was conducted in good faith"); *see also Sams v. State,* 71 N.E.3d 372, 382 (Ind. Ct. App. 2017) (finding that a search is "pretextual and therefore unreasonable" when "any administrative benefits of the officers' inventory search were incidental to the investigative benefits when the law required the opposite"); *see cf. Widduck v. State,* 861 N.E.2d 1267, 1271 (Ind. Ct. App. 2007) (finding that the inventory search was reasonable under the Fourth Amendment, in part, because "the record before [the court was] devoid of any indicia of pretext or subterfuge for general rummaging"). Here, we find indicia

---

[9] The fact that the State admitted as an exhibit at the motion to suppress hearing the police department policy regarding impoundment of vehicles and the subsequent inventory searches does not overcome the pretextual facts we observe in this record.

of pretext to search Combs' vehicle for incriminating evidence; accordingly, the search was unreasonable. We conclude that the search of Combs' vehicle was impermissible under the open view and plain view doctrines and the Fourth Amendment.

[28] In considering the admissibility of evidence obtained from an illegal search, we must consider the fruit of the poisonous tree doctrine.

> The fruit of the poisonous tree doctrine bars the admission of evidence "directly obtained by [an] illegal search or seizure as well as evidence derivatively gained as a result of information learned or leads obtained during that same search or seizure." To invoke the doctrine, a defendant must first prove a Fourth Amendment violation and then must show the evidence was a "fruit" of the illegal search. But the exclusion of evidence is not the result of a simple "but for" test. The doctrine has no application where (1) "evidence [is] initially discovered during, or as a consequence of, an unlawful search, but [is] later obtained independently from activities untainted by the initial illegality," . . . ; (2) "the information ultimately or inevitably would have been discovered by lawful means," . . . or (3) "the connection between the lawless conduct of the police and the discovery of the challenged evidence has 'become so attenuated as to dissipate the taint,' . . . The burden is on the State to prove one of these exceptions applies.

*Ogburn v. State,* 53 N.E.3d 464, 475 (Ind. Ct. App. 2016) (quotations and citations omitted), *trans. denied.*

[29] Here, the discovery of the evidence obtained from the vehicle was a direct result of the pretextual and illegal search of Combs' van. There is also no indication that the evidence from the van could have been obtained in another way.

Moreover, the connection between the search and the evidence is not attenuated to such a point that we could conclude it is no longer tainted. *See also Wright v. State,* 108 N.E.3d 307, 315 (Ind. 2018) (holding that the Fourth Amendment requires that "the objected-to-evidence will be excluded as fruit of the poisonous tree if police obtained it by exploiting the primary illegality").[10]

[30] The officers violated Combs' Fourth Amendment rights by searching his vehicle without a warrant, and the evidence obtained from the search was fruit of the poisonous tree. Specifically, the pills found in Combs' vehicle should not have been admitted at trial. Those pills formed the basis for Combs' convictions for Counts I, II, and III. Accordingly, we reverse Combs' convictions for Counts I, II, and III, and we remand for proceedings consistent with our opinion.

---

[10] For the reasons discussed above, we also conclude that impoundment of the vehicle would have been invalid. Law enforcement may have authority to impound a vehicle either through statute or law enforcement's community caretaking function. *Wilford v. State,* 50 N.E.3d 371, 375 (Ind. 2016). Our Supreme Court:

> [has] set forth a strict two-prong standard for proving that the decision to impound a person's vehicle without a warrant was reasonable:
>
>> (1) Consistent with objective standards of sound policing, an officer must believe the vehicle poses a threat of harm to the community or is itself imperiled; and
>>
>> (2) The officer's decision to impound adhered to established departmental routine or regulation.

*Id.* at 375-76 (quoting *Fair v. State,* 627 N.E.2d 427, 433 (Ind. 1993)). Combs' vehicle, parked in his driveway, would not have posed a threat of harm to the community; nor was the vehicle itself imperiled. *See Fair,* 627 N.E.2d at 435 (concluding that impounding the defendant's vehicle was improper even when the vehicle was not parked at the defendant's home, but "the permissibility of it remaining at the complex was in the hands of his acquaintances").

## B. Chemical Test Results

Next, Combs argues that the trial court abused its discretion in admitting the certified chemical results pursuant to Indiana Code Section 9-30-6-6(a) because the State was unable to prove that the person who drew blood from Combs acted under the direction of or under a protocol prepared by a physician. Indiana Code Section 9-30-6-6(a) states:

> (a) A physician, a person trained in retrieving contraband or obtaining bodily substance samples and acting under the direction of or under a protocol prepared by a physician, or a licensed health care professional acting within the professional's scope of practice and under the direction of or under a protocol prepared by a physician, who:
>
>> (1) obtains a blood, urine, or other bodily substance sample from a person, regardless of whether the sample is taken for diagnostic purposes or at the request of a law enforcement officer under this section;
>>
>> (2) performs a chemical test on blood, urine, or other bodily substance obtained from a person; or
>>
>> (3) searches for or retrieves contraband from the body cavity of an individual;
>
> shall deliver the sample or contraband or disclose the results of the test to a law enforcement officer who requests the sample, contraband, or results as a part of a criminal investigation. Samples, contraband, and test results shall be provided to a law enforcement officer even if the person has not consented to or otherwise authorized their release.

[32]     First, we agree with the State that Combs has waived this issue because he did not raise non-compliance with Indiana Code Section 9-30-6-6(a) below. *See Shorter v. State,* 144 N.E.3d 829, 841 (Ind. Ct. App. 2020) (quoting *Washington v. State,* 808 N.E.2d 617, 625 (Ind. 2004)) (concluding that failure to raise an argument in the trial court constituted waiver on appeal because "'a trial court cannot be found to have erred as to an issue or argument that it never had an opportunity to consider'"). Waiver notwithstanding, Tiffany Long, a lab phlebotomist at Witham Health Services, who conducted Combs' blood draw, testified that she followed a specific protocol required for blood draws, and that the procedure, therefore, was approved by a physician.[11] Long then testified in detail about the process, which included inverting the tubes of blood, labeling the samples, placing the samples in a biohazard bag, taping the bags shut, and placing them in a lock box. The trial court did not abuse its discretion in admitting the evidence of the chemical blood draw.

## II.     *Request to replace juror*

[33]     Combs next argues the trial court erred in refusing his request to replace a juror after the juror disclosed, after the trial began, that he knew one of the State's witnesses. "Trial courts have broad discretion in deciding whether to remove and replace a juror *before* deliberations have begun and, in such circumstances,

---

[11] The name of the physician who approved the procedure was not given at trial.

we reverse only for an abuse of discretion." *Durden v. State,* 99 N.E.3d 645, 650 (Ind. 2018) (citations omitted).

[34] During the State's case-in-chief, the trial court was advised that a juror formerly worked at a pharmacy that Lieutenant Mount frequented. The juror did not initially recognize Lieutenant Mount's name on the witness list during voir dire. When questioned about the nature of the juror's relationship to Lieutenant Mount, the juror stated that: (1) he and Lieutenant Mount did not have a social relationship; (2) the juror was no longer in contact with Lieutenant Mount; but (3) the juror thought positively of Lieutenant Mount. The juror told the trial court that the juror could consider the "big picture" of all the evidence in reaching a result in the case. Tr. Vol. III p. 68. Combs requested that the juror be replaced by an alternate juror, which the trial court denied.

[35] We cannot say the trial court abused its discretion. The juror advised the trial court his familiarity with Lieutenant Mount would not prevent him from considering and weighing the evidence independently. Moreover, the juror knew Lieutenant Mount professionally, not socially, and the two were no longer in contact. Accordingly, the trial court did not abuse its discretion in declining to replace the juror with an alternate juror.

### III. Prosecutorial Misconduct

[36] Combs argues the prosecutor committed misconduct by improperly shifting the State's burden of proof at trial to Combs regarding certain evidence.[12] During the defense's case-in-chief, Vicki Combs ("Vicki"), Combs' wife, testified that the pills belonged to Vicki's family members and that Vicki's family members had prescriptions for the pills. During Vicki's testimony, the following colloquy occurred on cross-examination:

> [DEPUTY PROSECUTOR]: And of course this happened about two and a half (2-1/2) years ago, right?
>
> [VICKI]: Correct.
>
> [DEPUTY PROSECUTOR]: Alright. And it is your testimony today that the pills found in the bag belonged to your, and I apologize, grandmother?
>
> [VICKI]: My mother, grandmother, father, they were a culmination of, of all that she [sic] was finding at the house.
>
> [DEPUTY PROSECUTOR]: So you [have] had two and a half (2-1/2) years to perhaps get some prescription records for your mother, grandmother, is that right?
>
> [COMBS' COUNSEL]: Objection Judge. May we approach?

---

[12] We observe that this issue is likely a moot point on remand as we have decided that admission of items in the van, which includes the pills, was improper.

Tr. Vol. IV p. 174. Combs objected on the grounds that this question left the jury with the belief "that the defense had a duty to produce exculpatory evidence, instead of the true requirement that the jury must find that the State themselves produced sufficient evidence" to support Combs' convictions. Appellant's Br. p. 27. The trial court sustained Combs' objection insofar as how the State asked the question, i.e., why Vicki did or did not produce any documentation to support her claim that the pills belonged to her family members; however, the trial court allowed the State to ask Vicki whether she produced such documentation.

[37] When reviewing a claim of prosecutorial misconduct, we must determine whether the prosecutor: (1) engaged in misconduct that, (2) under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been otherwise subjected. *Ryan v. State,* 9 N.E.3d 663, 667 (Ind. 2014); *see also Nichols v. State,* 974 N.E.2d 531, 535 (Ind. Ct. App. 2012). "'Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct.'" *Nichols,* 974 N.E.2d at 535 (quoting *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006)). We measure the weight of the peril by the probable persuasive effect of the misconduct on the jury rather than the degree of impropriety of the conduct. *Id.*

[38] We are not persuaded that the State's question resulted in improper burden-shifting. As the State articulates in its brief, the deputy prosecutor's question was "aimed at illuminating the suspicious timing of [Vicki's] claims of

Defendant's innocence and was relevant to the jury's assessment of her credibility." Appellee's Br. p. 42. Moreover, as the State also argues, the final jury instructions explained the State's burden to prove each element of the crime beyond a reasonable doubt. Based on the record before us, Combs has failed to demonstrate that the deputy prosecutor committed misconduct.

## IV. Insufficiency of Evidence

[39] Combs argues the evidence is insufficient to support his convictions for operating while intoxicated and leaving the scene of a property damage accident. When a challenge to the sufficiency of the evidence is raised, "[w]e neither reweigh evidence nor judge witness credibility." *Gibson v. State,* 51 N.E.3d 204, 210 (Ind. 2016) (citing *Bieghler v. State,* 481 N.E.2d 78, 84 (Ind. 1985), *cert. denied*), *cert. denied.* Instead, "we 'consider only that evidence most favorable to the judgment together with all reasonable inferences drawn therefrom.'" *Id.* (quoting *Bieghler,* 481 N.E.2d at 84). "We will affirm the judgment if it is supported by 'substantial evidence of probative value even if there is some conflict in that evidence.'" *Id.*; *see also McCallister v. State,* 91 N.E.3d 554, 558 (Ind. 2018) (holding that, even though there was conflicting evidence, it was "beside the point" because that argument "misapprehend[s] our limited role as a reviewing court"). "We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Love v. State,* 73 N.E.3d 693, 696 (Ind. 2017) (citing *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007)).

### A. Operating While Intoxicated

[40] Pursuant to Indiana Code Section 9-30-5-2(b), "a person who operates a vehicle while intoxicated," commits operating a vehicle while intoxicated. If the operation is done "in a manner that endangers a person," the offense is a Class A misdemeanor. Ind. Code § 9-30-5-2(b). Combs argues the evidence was insufficient that: (1) Combs was the driver of the vehicle; and (2) intoxication occurred contemporaneously with his operation of the vehicle.

[41] Regarding Combs' first argument, the State provided sufficient evidence that Combs operated the vehicle. One of the witnesses to the accident testified that the driver who left the scene of the accident was the same person she later observed speaking with the police in Combs' driveway. *See* Tr. Vol. III p. 12.[13] Moreover, moments after the accident was reported, Officer Koontz observed Combs exit the driver's side of the vehicle. According to the officers, Combs claimed he intended to call the police to report the accident, which supports the inference that Combs was the driver. The evidence was sufficient to prove that Combs operated the van.

[42] In addition, the evidence also supported the finding that Combs operated the van while intoxicated. Officer Koontz identified Combs' pinpoint pupils, slow speech, and glassy eyes. Combs failed two field sobriety tests. The blood and urine tests administered shortly after Combs drove the vehicle revealed positive

---

[13] The witness did not identify Combs in the courtroom; however, the witness was clear that the person she saw at the scene of the accident was the same person she saw speaking with the police in Combs' driveway.

results for controlled substances. Dr. Sheila Arnold, a forensic toxicologist with the Indiana State Department of Toxicology, testified that the concentrations of substances found in Combs' system "were consistent with the impairment observed by the officer." Tr. Vol. IV p. 113. Specifically, Dr. Arnold testified that pinpoint pupils are a "classic indicator" of opioids in an individual's system. *Id.* at 120.

[43] Combs' arguments that: (1) we cannot determine the precise time of intoxication; and (2) Combs could not have been intoxicated because he was able to avoid an accident with another vehicle, are merely requests for us to reweigh evidence, which we cannot do. *See Gibson,* 51 N.E.3d at 210. The evidence was sufficient to find Combs guilty of operating while intoxicated.

### B. Leaving the Scene of an Accident

[44] Combs next argues that the evidence was insufficient to support Combs' conviction for leaving the scene of an accident. Combs was charged under Indiana Code Sections 9-26-1-1.1(a)(4) and (b).

> (a) The operator of a motor vehicle involved in an accident shall do the following:
>
>> (1) Except as provided in section 1.2 of this chapter, the operator shall immediately stop the operator's motor vehicle:
>>
>>> (A) at the scene of the accident; or
>>>
>>> (B) as close to the accident as possible;

in a manner that does not obstruct traffic more than is necessary.

(2) Remain at the scene of the accident until the operator does the following:

> (A) Gives the operator's name and address and the registration number of the motor vehicle the operator was driving to any person involved in the accident.

> (B) Exhibits the operator's driver's license to any person involved in the accident or occupant of or any person attending to any vehicle involved in the accident.

* * * * *

(4) If the accident involves a collision with an unattended vehicle or damage to property other than a vehicle, the operator shall, in addition to the requirements of subdivisions (1) and (2):

> (A) take reasonable steps to locate and notify the owner or person in charge of the damaged vehicle or property of the damage; and

> (B) if after reasonable inquiry the operator cannot find the owner or person in charge of the damaged vehicle or property, the operator must contact a law enforcement officer or agency and provide the information required by this section.

> (b) An operator of a motor vehicle who knowingly or
> intentionally fails to comply with subsection (a) commits leaving
> the scene of an accident, a Class B misdemeanor.

Ind. Code § 9-26-1-1.1. Combs argues that the statute did not require Combs to stay at the scene of the accident to determine the owner of the property and/or contact law enforcement.

[45] "When interpreting a statute, our primary goal is to fulfill the legislature's intent." *Day v. State,* 57 N.E.3d 809, 813 (Ind. 2016). The best evidence of the legislature's intent is the statute's language. *See id.* "If that language is clear and unambiguous, we simply apply its plain and ordinary meaning, heeding both what it does say and what it does not say." *Id.* (quotations omitted).

[46] Here, the statute contemplates what a person must do, under Indiana Code Section 9-26-1-1.1(a)(4), when a driver is in an accident that results in property damage. That subsection of the statute specifically states the requirements are *in addition to* the mandate of Indiana Code Section 9-26-1-1.1(a)(2), under which a driver must remain at the scene of an accident. The statute does not provide that, in the event of property damage, a person may drive away and call law enforcement at a later, more convenient time. Accordingly, the statute required Combs to determine the owner of the property or contact law enforcement at the scene of the accident.

[47] Sufficient evidence supports Combs' conviction for leaving the scene of an accident. Witness testimony revealed that Combs hit the electrical box, got out

of his vehicle, took photographs with his phone, drove away from the scene, and went home. Accordingly, the evidence was sufficient to convict Combs of leaving the scene of an accident, a Class B misdemeanor.

## Conclusion

[48] The warrantless search of Combs' vehicle violated his Fourth Amendment rights; therefore, evidence found as a result of the illegal search should have been excluded. Accordingly, we reverse Combs' convictions for Counts I, II, and III, and remand for proceedings consistent with this opinion. The trial court, however, did not abuse its discretion in admitting the results of Combs' chemical blood test or in failing to replace a juror with the alternate juror. The deputy prosecutor did not commit misconduct, and the evidence was sufficient to convict Combs of leaving the scene of an accident and operating a vehicle while intoxicated. Accordingly, we affirm in part, reverse in part, and remand for proceedings consistent with our opinion.

[49] Affirmed in part, reversed in part, and remanded.

Riley, J., and Mathias, J., concur.